UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                          | )  |                        |
|------------------------------------------|----|------------------------|
| JUAN PABLO DEL ROSARIO,                  | )  |                        |
|     Plaintiff,       | )  |                        |
|                                          | )  |                        |
| v.                                       | )  | CIVIL ACTION           |
|                                          | )  | No. 13-30017-DHH       |
| CAROLYN W. COLVIN,[1]                    | )  |                        |
| Acting Commissioner of the               | )  |                        |
| Social Security Administration,          | )  |                        |
|     Defendant.       | )  |                        |
|                                          | )  |                        |

## ORDER GRANTING DEFENDANT'S MOTION TO AFFIRM
March 31, 2014

Hennessy, M.J.

Plaintiff, Juan Pablo Del Rosario ("Del Rosario"), brought this action against Defendant, Commissioner of the Social Security Administration ("Commissioner"), seeking judicial review of a final decision by the Commissioner denying Del Rosario's application for Disability Insurance Benefits ("DIB"). Del Rosario moves for a judgment on the pleadings, Fed. R. Civ. P. 12(c), that this Court either find him entitled to disability benefits or remand the case for further hearing. (Docket #11). The Commissioner moves for an order affirming its final decision.[2] (Docket #13). The fundamental issue raised by Del Rosario is whether the factual findings by the Administrative Law Judge ("ALJ") adequately address his claim of a disabling mental

---

[1] Under Fed. R. Civ. P. 25(d), as of February 14, 2013, Carolyn W. Colvin is substituted for Michael J. Astrue, the former Commissioner of the Social Security Administration.

[2] A transcript of the Social Security Administration official record ("Tr.") has been filed with the court under seal. (Docket #10).

impairment. For the reasons that follow, Del Rosario's motion is denied and the Commissioner's motion is allowed.

## BACKGROUND

Del Rosario alleges a disability due to a combination of mental and physical impairments beginning June 1, 2006. (Tr. 34, 42-44, 152-53).[3] The ALJ held a hearing on May 16, 2011, in Springfield, MA, attended by Del Rosario, his attorney, an interpreter, and a vocational expert. (Tr. 28). Del Rosario, who was forty-four years old at that time, had a first-grade education and spoke limited English. (Tr. 16, 31-32). His primary work experience had been that of a tour guide and a merchandise seller. (Tr. 51). On June 14, 2011, the ALJ denied Del Rosario's claim for DIB and found him not disabled. (Tr. 10-27). The ALJ's decision became final on November 26, 2012 when the Appeals Council denied the request to review the same. (Tr. 1-6). Having timely pursued and exhausted his administrative remedies before the Commissioner, Del Rosario filed a complaint in this court pursuant to 42 U.S.C. § 405(g). (Docket #1). Del Rosario filed a motion for judgment, and the Commissioner filed a motion to affirm the ALJ's decision.

### A. Medical History

Del Rosario was treated at Gandara Mental Health Center ("GMHC") from September 8, 2005 through April 28, 2006.[4] (Tr. 435-54). Upon intake, Brunilda DeLeon, Ed.D., a psychologist, noted that Del Rosario's signs and symptoms included difficulty sleeping, nightmares, flashbacks, crying spells, anxiety, fears of being alone and of talking to people, having no friends, and suffering from panic attacks. (Tr. 450). Dr. DeLeon noted upon

---

[3] Del Rosario's arguments on appeal concern only his mental impairments, so this decision addresses only the facts and law relevant to his appeal.

[4] Even though these records predate the date of alleged disability, June 1, 2006, they were included in the medical records and were also considered by the ALJ. (Tr. 20, 27).

2

examination that Del Rosario's mood/affect was "depressed; tearful/anxious," and that he suffered from "insomnia; early/frequent awakening," as well as "some problems with memory." (Tr. 453). Dr. DeLeon diagnosed Del Rosario with Post-traumatic Stress Disorder and conducted a Global Assessment of Functioning ("GAF")[5] evaluation, scoring Del Rosario at 53. (Tr. 454). An Initial Treatment Plan by Dr. DeLeon from September 8, 2005, classified Del Rosario's depression, anxiety and sleep disturbance symptoms as "severe." (Tr. 443). In an Updated Treatment Plan, dated January of 2006, Del Rosario's depressive symptoms were again classified as severe. (Tr. 439). On April 28, 2006, Del Rosario's Treatment Plan was again updated and his diagnosis was modified to include Major Depressive Disorder, in addition to Post-traumatic Stress Disorder. (Tr. 439). His GAF was scored at 53. (Id.).

Del Rosario began seeing psychiatrist Dr. Moris Pardo in February 2008. (Tr. 279). He had met with Dr. Pardo approximately every two months through the hearing date in May 2011. (Tr. 37, 455). On April 23, 2009, Dr. Pardo completed a psychiatric disorder questionnaire based on his treatment of Del Rosario. (Tr. 279-81). Among his notations, Dr. Pardo indicated that Del Rosario had "adequate concentration and attention," and "no problem" with his memory. (Tr. 279). He indicated that Del Rosario had never been hospitalized, had a history of anxiety, and was alert and pleasant. (Id.). He found Del Rosario had no psychotic symptoms, memory or cognitive deficits, was fully oriented, and had fair insight and judgment. (Id.). He also indicated that Del Rosario did not require excessive supervision, had no problems traveling

---

[5] "The GAF scale is used to report a clinician's judgment of an individual's overall level of psychological, social, and occupational functioning and refers to the level of functioning at the time of evaluations." Bernier v. Astrue, 09-12167-DJC, 2011 WL 1832516 *3 n.4 (D. Mass. 2011). GAF scores between 41-50 indicate serious impairment in social, occupational, or school functioning; scores between 51-60 indicate moderate impairment; and scores between 61 and 70 indicate mild symptoms. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed., text rev. 2000).

in public, and had a "fair" ability to deal with routine stress. (Tr. 280). Dr. Pardo scored Del Rosario's GAF at 70, indicating his prognosis was "good." (Tr. 279-81). Dr. Pardo completed another psychiatric disorder form on November 4, 2009, wherein he confirmed that Del Rosario's ability to function remained the same. (Tr. 318-20). In a May 31, 2011 letter updating the ALJ, Dr. Pardo wrote that he had continued to see Del Rosario every two months, and over this time, had changed some of Del Rosario's prescription medication to better treat his anxiety and sleep difficulties; he otherwise indicated that Del Rosario reported no severe side effects from his medication and that his prognosis remained "good." (Tr. 455). The ALJ gave "substantial and controlling weight" to Dr. Pardo's opinions because he was Del Rosario's long-standing treating psychiatrist, and the ALJ found that the records established the minor effects of Del Rosario's mental impairments.[6] (Tr. 18).

**B. Opinion Evidence**

On June 9, 2009, non-examining state agency psychologist Ruth Aisenberg completed a Psychiatric Review Technique form regarding Del Rosario's anxiety-related disorders. (Tr. 289-302). She reviewed records from GMHC and Dr. Pardo. (Tr. 301). Dr. Aisenberg concluded that Del Rosario's anxiety caused, at most, only mild limitations in daily activities, and moderate

---

[6] With respect to Dr. Pardo, the ALJ determined as follows: "As regards his mental impairments, I give substantial and controlling weight to the views of Dr. Pardo, the claimant's long-time treating psychiatrist, whose records both remote and recent conclusively establish the relatively minor effects of the claimant's mental impairments." (Tr. 18). The ALJ added in a footnote that "[a]lthough I found the claimant's anxiety severe, it is marginally so and could easily be found non-severe based on all of the evidence in the case, most significantly that from Dr. Pardo." (Tr. 18 n.21). Moreover, in assessing the credibility of Del Rosario based on his testimony, the ALJ found Del Rosario was "not fully credible … [because his] assertions of disability due to mental impairments are grossly inconsistent with the findings of his treating psychiatrist, both remote and recent." (Tr. 19). Based on the foregoing findings, and others in the record reflecting the significance of the longitudinal history of treatment between Del Rosario and Dr. Pardo (e.g., Tr. 18 n. 19), the record reflects that the ALJ assigned more weight to Dr. Pardo's opinion than any other opinion, including Del Rosario's opinion of his mental state.

limitations in social functioning and maintaining concentration, persistence, or pace. (Tr. 289, 294, 299). She also noted that although Del Rosario had a history of symptoms of post-traumatic stress disorder, he no longer presented with such symptoms. (Tr. 301). In crafting her Mental Residual Functional Capacity Assessment ("RFC"), Dr. Aisenberg found that the evidence failed to establish the "paragraph C" criterion, noting none of Del Rosario's limitations of mental abilities were marked. (Tr. 300, 303-04). She opined that Del Rosario could be expected to recall and carry out simple instructions for up to two hours over an eight hour span with some inconsistency in pace, interact with others as needed, and adapt to routine changes. (Tr. 305). The ALJ accorded "no weight" to Dr. Aisenberg's report because she never met Del Rosario and because her opinions were, without explanation, "radically inconsistent" with those of Dr. Pardo. (Tr. 18).

On May 12, 2010, state consultant Sheree Estes, Psy.D., evaluated Del Rosario. (Tr. 374-77). Del Rosario told her about hearing voices, loss of appetite, nightmares, memory issues, and sleep issues. (Tr. 376). Del Rosario denied having anxiety and did not "endorse panic attacks," but admitted to having problems being in crowds of people and going out other than to walk the dogs. (Tr. 374-75). After examining him, Dr. Estes noted "some levels of paranoia," and that he was "quite sad" and "distractible." (Tr. 376). She diagnosed Del Rosario with major depressive disorder with a question of some psychotic tendencies and with post-traumatic stress disorder. (Tr. 377). She scored his GAF at 52-53. (Tr. 377). The ALJ accorded "little weight" to Dr. Estes' views, finding that she saw Del Rosario only once and lacked the longitudinal history that Dr. Pardo had with Del Rosario. (Tr. 18). The ALJ also faulted Dr. Estes for failing to explore many internal inconsistencies in Del Rosario's statements to Dr. Estes. (Tr. 18 n.22).

5

At the May 16, 2011 hearing before the ALJ, Del Rosario testified that he could not work because he was very depressed and had been getting worse over the last year. (Tr. 34). He testified that he lived with his girlfriend and cared for his daughter who also lived with him, and that he did not like to be around too many people or to be alone. (Tr. 40-41). He spent most of his time watching television. (Tr. 42). He confirmed that he had seen Dr. Pardo every two months from 2008 through the date of the hearing, i.e., May 2011. (Tr. 37). He testified that he was taking Ambien, Seroquel and Clonazepam, but that his dosage had increased because he was doing badly. (Tr. 40). Del Rosario suggested that the ALJ contact Dr. Pardo to obtain recent medical records because "Dr. Pardo will tell you how I'm doing now." (Tr. 34). The ALJ then contacted Dr. Pardo who, in turn, submitted the May 31, 2011 letter described above, reporting that Dr. Pardo had changed Del Rosario's medication to better treat anxiety and sleep difficulties, and that he continued to assess Del Rosario's prognosis as "good." (Tr. 455).

### C. ALJ's Findings and Decision

At step one, the ALJ found that Del Rosario had not engaged in substantial gainful activity from June 1, 2006 (the alleged onset date), through December 31, 2010 (the last date on which Del Rosario met the insured status requirements of 20 C.F.R. § 404.130). (Tr. 15, 154). At step two, the ALJ found that Del Rosario suffered from severe impairments of left arm tendonitis, musculoskeletal pain of several extremities, and anxiety,[7] but, found that Del Rosario's high blood pressure, back pain, and major depressive disorder and post-traumatic

---

[7] Even though the ALJ indicated found Del Rosario's anxiety severe, he noted "it is marginally so and could easily be found non-severe based on all of the evidence in the case, most significantly that from Dr. Pardo." (Tr. 18 n. 21).

stress disorder were non-severe impairments.[8] (Tr. 16). Based on his finding that Del Rosario suffered from at least some severe impairments, the ALJ proceeded to step three to analyze whether Del Rosario had an impairment or combination of impairments that met or medically equaled an impairment listed in Appendix 1 of Subpart P of the Social Security Regulations. 20 C.F.R. § 404.1520(a)(4)(iii). With respect to the "paragraph B" criteria, the ALJ found that Del Rosario had mild restriction in his activities of daily living; moderate difficulties with social functioning; mild difficulties with concentration, persistence or pace; and no cognitive impairments that significantly affected Del Rosario's ability to function. (Tr. 19). He noted that Del Rosario had no marked restrictions or episodes of decompensation. (Id.). Finding that Del Rosario did not satisfy the "paragraph B" criteria, the ALJ then considered whether Del Rosario met the "paragraph C" criteria. (Tr. 20). The ALJ found that Del Rosario did not satisfy "paragraph C", noting that Del Rosario was able to live outside a highly structured setting and could be expected to cope with slight changes in routine. (Id.). The ALJ then proceeded to step four, and "[a]fter careful consideration of the entire record," (id.) found that Del Rosario had the residual functional capacity "to perform the full range of light work … and … would be limited to a job that was unskilled and had only occasional contact with others." (Id.). In making this determination, the ALJ noted that he considered the limitations addressed in the "paragraph B" analysis, in a more detailed way, and specifically included those limitations when assessing Del Rosario's RFC, i.e., "the following residual functional capacity assessment reflects the degree of limitation the [ALJ] has found in the 'paragraph B' mental function analysis." (Id.). At step five, the ALJ found that Del Rosario could perform other work existing in significant numbers in

---

[8] With respect to the findings that the mental impairments were not severe, the ALJ found that Del Rosario's testimony overstated the effects of his mental impairments because his testimony was "grossly inconsistent" with Dr. Pardo's findings. (Tr. 19). Del Rosario's challenge to this finding is addressed in the first point of the Discussion section below.

7

the national economy. (Tr. 20-21). Therefore, the ALJ concluded that Del Rosario was not disabled. (Tr. 21-22).

**D. Del Rosario's Objections**

Del Rosario claims the ALJ erred by (1) concluding his depressive disorder and post-traumatic stress disorder were non-severe impairments; and (2) assessing "little weight" to state consultative psychologist Sheree Estes' opinion regarding Del Rosario's mental impairments.

## DISCUSSION

The District Court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, the Court may not disturb the Commissioner's findings where they are supported by substantial evidence and the Commissioner has applied the correct legal standard. Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Although the administrative record might support multiple conclusions, the Court must uphold the Commissioner's findings when they are supported by substantial evidence. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991).

1. The ALJ's finding that Del Rosario's mental impairments were non-severe

Del Rosario first argues that the ALJ erred by not classifying Del Rosario's major depressive disorder and post-traumatic stress disorder as severe impairments. According to Del Rosario, evidence in the record from the GMHC and from consultant Dr. Estes establishes that these disorders "significantly impact[ed] Del Rosario's ability to perform basic mental work

8

activities." (Docket #12, p. 7). In this regard, Del Rosario points to GMHC records from September 2005 which reflect Dr. DeLeon's diagnosis of post-traumatic stress disorder, a GAF score of 53, and the "Initial Treatment Plan" formulated in September 2005, in which Dr. DeLeon described Del Rosario's depression symptoms as "severe." Del Rosario also cites to updates to the Treatment Plan, the second of which, in April 2006, modified his diagnosis to include major depressive disorder, and again scored his GAF at 53. Del Rosario also relies on the opinion of Dr. Estes, which he claims, if properly weighed, would prove or help prove that the disorders in question were severe.

Del Rosario bears the burden of proving that his major depressive disorder and post-traumatic stress disorder were severe. Ramos v. Barnhart, 60 Fed. Appx. 334, 334 (1st Cir. 2003) (quoting Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)). He was required to prove that the impairments, alone or in combination, were sufficiently severe to prevent him from doing basic work activities. Bowen, 482 U.S. at 146-49; 20 C.F.R. § 404.1520(c); see also, 20 C.F.R. § 404.1521(a) (defining non-severe impairments). Basic work activities include the capacity to see, hear, and speak, or to understand, carry out and remember simple instructions, and to use judgment. 20 C.F.R. §§ 404.1521(b)(1)-(6). The record shows that Del Rosario has failed to meet his burden and supports the ALJ's finding of non-severity.

The ALJ's finding that Del Rosario's mental disorders were not severe impairments is amply supported by the observations and opinions of Dr. Pardo. Throughout the period of the alleged disability, Dr. Pardo was Del Rosario's treating psychiatrist. (Tr. 37, 455). On April 23, 2009, Dr. Pardo completed a psychiatric disorder questionnaire based on his treatment of Del Rosario. (Tr. 279-81). Among his notations, Dr. Pardo indicated that Del Rosario had "adequate concentration and attention," and "no problem" with his memory. (Tr. 279). He indicated that

Del Rosario had never been hospitalized, had a history of anxiety, and was alert and pleasant. (Id.). He found Del Rosario had no psychotic symptoms, memory or cognitive deficits, was fully oriented, and had fair insight and judgment. (Id.). He also indicated that Del Rosario did not require excessive supervision, had no problems traveling in public, and had a "fair" ability to deal with routine stress. (Tr. 280). Dr. Pardo scored Del Rosario's GAF at 70, indicating his prognosis was "good." (Tr. 279-81). Dr. Pardo completed another psychiatric disorder form on November 4, 2009, wherein he confirmed that Del Rosario's ability to function remained the same. (Tr. 318-20). Finally, in a May 31, 2011 letter updating the ALJ, Dr. Pardo wrote that he had continued to see Del Rosario every two months, and over this time, had changed some of Del Rosario's prescription medication to better treat his anxiety and sleep difficulties; he otherwise indicated that Del Rosario reported no severe side effects from his medication, indicated that his basic work activity findings about Del Rosario had not changed, and that Del Rosario's prognosis remained "good." (Tr. 455). Dr. Pardo's opinions, which are the product of a longstanding treating relationship, provide substantial evidence for the ALJ's non-severity findings.

Del Rosario's challenge to the ALJ's severity findings largely ignores Dr. Pardo's observations and opinions, and, as noted above, focuses on the GMHC records and Dr. Estes. (Docket #12, at 6-8). This re-focused examination of the record, rather than establishing error, further supports the ALJ's finding. The persuasiveness of the GMHC records is doubtful because they reflect observations and opinions that predate the alleged onset of disability in June 2006. Dr. DeLeon's initial meeting with Del Rosario was in September 2005, and the last GMHC record appears to be from April 28, 2006. See, e.g., Omar v. Astrue, 2009 WL 961230 *6 (D. Me. 2009) (concluding that medical evidence predating the date of the alleged onset

should not be considered in determining severity of injury). Those records from 2005 and 2006 are also unpersuasive as they shed no light on Del Rosario's claim that his symptoms were getting worse in 2010 and 2011. Moreover, the GMHC records simply do not show that Del Rosario's post-traumatic stress disorder and/or major depressive order were diagnosed as "severe." Rather, the records show that Dr. DeLeon diagnosed Del Rosario with post-traumatic stress disorder and major depressive disorder -- diagnoses that are not in dispute -- and that she used the term "severe," not to describe either of these disorders, but to describe "symptoms" of "depression" from which Del Rosario suffered.[9]

Similarly, Del Rosario's attempt to ground the severity analysis on records from Dr. Estes is misplaced. Although Del Rosario cites to observations from Dr. Estes that, at best, might lend some support to categorizing his mental disorders as severe, her evaluation, and the basis for it, simply does not go as far as Del Rosario's argues. For instance, her observations that Del Rosario needed help with paperwork and could not spell "mundo," may very well be attributable to Del Rosario's lack of formal education. Like the GMHC records, Dr. Estes does not ever describe Del Rosario's mental impairments as severe, nor does her evaluation suggest otherwise.

However, even assuming for the sake of argument that the ALJ did err in his finding that Del Rosario's post-traumatic stress disorder and major depressive disorder were non-severe impairments, any such error was harmless. First, as the record shows, at step two of the disability analysis, the ALJ found that Del Rosario suffered from impairments that were severe --

[9] Although Del Rosario does not identify from the records to what disorders his "severe" symptoms are attributable -- and the records from GMHC themselves are largely illegible -- according to Del Rosario, they include anxiety. Rather than contradicting the ALJ, the finding that Del Rosario's anxiety is severe is consistent with the ALJ's finding. (Tr. 16).

left arm tendonitis, musculoskeletal pain of several extremities, and anxiety. (Tr. 16). Because the ALJ found some severe impairments, the disability analysis proceeded from step two, and it hardly matters that he found that Del Rosario's major depressive disorder and post-traumatic stress disorder (along with high blood pressure, back pain) were non-severe impairments. Second, the alleged error of designating his major depressive disorder and post-traumatic stress disorder non-severe did not affect the RFC. Rather, the ALJ expressly noted that in crafting the RFC, he had considered the entire record and all symptoms reasonably consistent with the evidence. (Tr. 20). The exhibits to the record include, among other things, the GMHC records.[10] (Tr. 27). The RFC therefore considered the limitations that the doctors noted from both the major depressive disorder and post-traumatic stress disorder, even if the ALJ found them to be non-severe impairments.[11]

Accordingly, Del Rosario has not shown an error in the ALJ's finding that Del Rosario's major depressive and post-traumatic stress disorders were non-severe impairments. Moreover, even if he had shown there was an error, any error would have been harmless because the limitations from the mental disorders were captured in the RFC. There was no prejudice to Del Rosario. Noel v. Astrue, 11-30037-MAP, 2012 WL 2862141 at *6 (D. Mass. 2012); Perez v. Astrue, 11-30074-KNP, 2011 WL 6132547 at *4 (D. Mass. 2011).

---

[10] Insofar as Del Rosario argues that his impairments would have been considered severe if the ALJ had not ignored the GMHC records (Docket #12, p.8), he is wrong as the transcript plainly shows. The GMHC records, even though they predated the date of disability, were considered.

[11] In relevant part, the RFC provides that "[Del Rosario] would be limited to a job that was unskilled and had only occasional contact with others." (Tr. 20). Thus, for purposes of the RFC, Del Rosario's limitations were addressed in the RFC.

2. The ALJ assessment of weight to the medical opinions

Del Rosario's second and final argument is that the ALJ erred in weighing the opinions of treating sources. Del Rosario complains that it was error to assess significant weight to the opinions of Dr. Pardo when his records in evidence consist of only two psychiatric disorder questionnaires and a letter in response to an inquiry by the ALJ. It was also error, argues Del Rosario, to accord only little weight to the opinion of consultative examiner psychologist Estes. Essentially, Del Rosario asks this Court to re-weigh the evidence before the ALJ.

"[I]t is not for the court to reweigh the evidence or substitute its judgment for that of the hearing officer." Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 163 (D. Mass. 2010). The ALJ is solely responsible for determining issues of credibility and to draw inferences from the record. Irlanda Ortiz, 955 F.2d at 769. This Court must uphold the ALJ's decision so long as it is supported by substantial evidence. Id. The social security regulations require the ALJ to evaluate all opinion evidence, and to consider the treatment relationship (nature and extent), whether the opinion is supported by and consistent with other evidence, and whether the source is a specialist. See 20 C.F.R. § 404.1527(c).

Here, as was described in the facts and in section one above, the record unambiguously establishes that insofar as mental health issues were concerned, Dr. Pardo was Del Rosario's principal and longstanding caregiver. Dr. Pardo, a psychiatrist, is an acceptable medical source who: specializes in mental impairments, examined and treated Del Rosario for years, and provided an opinion consistent with the record as a whole. By the same token, the ALJ accorded "little weight" to the opinion of state consultant psychologist Estes who lacked the long-standing treatment relationship with Del Rosario that Dr. Pardo had with Del Rosario. Instead, she met Del Rosario only once and lacked precisely that longitudinal history with Del Rosario.

Moreover, even if the ALJ accorded greater weight to Dr. Estes' opinion, as noted above, Dr. Estes does not ever describe Del Rosario's mental impairments as severe, and Del Rosario fails to explain how according greater weight to her opinion would have changed his RFC. Del Rosario's citation to Dr. Estes' notation that Del Rosario had difficulties with attention and concentration (Docket #12, p.10 n,2) is unpersuasive when considered in light of the entire record. Lastly, the ALJ had the discretion to discount Dr. Estes' opinions because, in his assessment of the evidence, Dr. Estes failed to address contradictions in information provided to her by Del Rosario. (Tr. 18 n.22). The ALJ's decision to accord "little weight" to Dr. Estes' opinion is supported by substantial evidence in the record.

Del Rosario also attacks the ALJ's assessment of weight claiming that only a portion of Dr. Pardo's records were received and considered. Even if the records in evidence from Dr. Pardo are merely a subset of the entire file Dr. Pardo created over a long-treating relationship,[12] Del Rosario does not and cannot claim that the records in evidence are inaccurate or inconsistent with other records from Dr. Pardo that were not put in evidence. Instead, Del Rosario claims that without narrative records from Dr. Pardo, there was no way for the ALJ to accurately test Del Rosario's testimony against Dr. Pardo's records in evidence. Del Rosario's argument misses the mark. Not only does Del Rosario fail to explain why his RFC would have been affected if the ALJ gave greater weight to his testimony that his medications have the side effects of making him nauseous and groggy (Tr. 40, Docket #12, pp. 3, 9), but more importantly, Del Rosario ignores an established principle of law that the ALJ was not required to credit Del Rosario's testimony. See Bianchi v. Sec'y of Health and Human Servs., 764 F.2d 44, 45 (1st Cir. 1985)

---

[12] It is not clear from the record whether there are other treatment records kept by Dr. Pardo. The ALJ requested Dr. Pardo's records (Tr. 38-39, 46, 49, 54), and Dr. Pardo responded with his May 31, 2011 letter.

(recognizing the established principle that the ALJ "is not required to take the claimant's assertions of pain at face value."). Moreover, this is not a case of "cherry-picking" some records over others to support a questionable diagnosis. See Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011) (reversing an ALJ's finding of no disability where ALJ had cherry-picked a single treatment note from a years-long treatment record to undermine an RFC assessment). To the contrary, as is discussed above, the three medical records submitted by Dr. Pardo reflect several years of a treatment relationship with Del Rosario. Indeed, Del Rosario himself testified at the hearing that Dr. Pardo would be the best person to update the ALJ on Del Rosario's medical status. There is no reason to discount those medical records by Dr. Pardo that are in evidence, even if they are a subset of a larger corpus of medical records. The record supports the ALJ's finding that Dr. Pardo was the medical source with the best longitudinal picture of Del Rosario.

Accordingly, substantial evidence in the record supports the ALJ's decision to assign little weight to Dr. Estes and significant weight to Dr. Pardo. The ALJ's decision to award substantial and controlling weight to Dr. Pardo's opinions is consistent with the requirements set forth in the regulations. Therefore, the Court must uphold the ALJ's findings. Irlanda Ortiz, 955 F.2d at 770.

## Conclusion

For the foregoing reasons, this Court orders that Plaintiff's Motion for Judgment on the Pleadings (Docket #11) be DENIED and that the Commissioner's Motion for an Order Affirming its Final Decision (Docket #13) be GRANTED.

> */s/ David H. Hennessy*
> David H. Hennessy
> United States Magistrate Judge